UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PHOVONE SENECHALEUNSOUK,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02555-JHC<br><br>ORDER |

## I
## Introduction

This matter comes before the Court on Phovone Senechaleunsouk's Petition for Writ of Habeas Corpus. Dkt. # 9. The Court has considered the materials filed in support of and in opposition to the petition, the rest of the record, and the applicable law. Being fully advised, for the reasons below, the Court GRANTS the Petition.

## II
## Background

Petitioner is Laotian but was born in a refugee camp in Thailand in 1977. Dkt. # 15-3 at 11; Dkt. # 9 at 6. As a toddler, Petitioner entered the United States in 1980 with lawful permanent resident status. Dkt. # 14-1 at 4. Between 1996 and 1998, Petitioner was convicted

of several crimes and served a 17-year prison sentence before ICE moved him to an immigration detention center in June 2014. Dkt. # 15-3 at 29-32; Dkt. # 9 at 7; Dkt. # 14-1 at 5.

On July 8, 2014, an immigration judge issued an order removing Petitioner from the United States to Laos. Dkt. # 14-3. Later that year, ICE released Petitioner on an Order of Supervision (OSUP), citing its inability to obtain travel documents from Laos authorizing Petitioner's removal. Dkt. # 14-4.

The Government states that Petitioner was convicted of a DUI in 2022 and arrested for another DUI in 2025. Dkt. # 12 at 5; Dkt. # 13 at 3; Dkt. # 14-1 at 4. The Government also states that between 2024 and 2025, Petitioner twice failed to report to ICE as mandated by his OSUP. Dkt. # 12 at 5; Dkt. # 13 at 3.

On April 1, 2026, ICE arrested Petitioner and detained him at the Northwest ICE Processing Center (NWIPC), where he is still detained. Dkt. # 13 at 3. On the same day of Petitioner's arrest, but after he was in custody, ICE served Petitioner a notice stating that his OSUP was revoked because his DUI arrest in 2025 violated his conditions of release. Dkt. # 14-5; Dkt. # 14-6. The notice documents also stated that Petitioner's release was revoked because "[t]he country of Laos has since changed their internal policy regarding the issuance of travel document for its citizens." Dkt. #14-5 at 2. Accordingly, "[c]ircumstances have changed such that there is significant likelihood of removal in the reasonably foreseeable future," as "ICE is seeking a travel document to effect your expeditious removal to Laos." Dkt. # 14-6. The notice said that Petitioner would be afforded an informal interview that day. Dkt. # 14-6 at 3. But there is no evidence, nor do Respondents allege, that such an interview actually took place.

Three months later, on July 2, 2026, ICE received a travel document from Laos allowing Petitioner to enter the country. Dkt. # 14-7. On July 10, 2026, ICE served Petitioner with a

notice of imminent removal to Laos. Dkt. # 14-8. The Government states that Petitioner was scheduled on a charter flight to Laos on July 28, 2026. Dkt. # 13 at 4. But on July 22, 2026, six days before this alleged flight, the Court issued an order preventing Petitioner's transfer out of the district during the pendency of his habeas petition. Dkt. # 8.

Also in late July, Petitioner moved for the immigration court to reopen his order of removal. Dkt. # 13 at 5. Petitioner also moved for an emergency stay of removal. Dkt. # 15-3 at 4. On July 24, 2026, an immigration judge granted Petitioner's emergency stay of removal, stating, "Good cause has been established for the motion." Dkt. # 15-1 at 3.

Petitioner has lived in the United States since he was a toddler, and his family remains here. Dkt. # 15-3 at 11-14. At the time of his re-detainment, Petitioner had a long-term job and lived with his girlfriend and stepdaughter in Spokane. Dkt. # 15-2; Dkt. # 15-3 at 11-14.

## III
## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### A. Re-Detention in Violation of Due Process

Petitioner argues that his re-detention without pre-detention notice or a hearing violated the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" The right to due process "applies to all 'persons' within the United States,

including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335. The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[1]

---

[1] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id*. at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id*. And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*.; *see Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g*., *E.A. T.-B.*, 795 F. Supp. 3d at 1321 (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

Respondents do not address any of the *Mathews* factors. In fact, Respondents "acknowledge that courts in this District have determined that revocation of an OSUP requires a pre-detention hearing prior to the re-detention of noncitizens." Dkt. # 12 at 10; *see, e.g.*, *Saley v. Scott*, 2026 WL 914810, at *5 (W.D. Wash. Apr. 3, 2026) (concluding that "due process requires pre-deprivation notice and a hearing before revoking a noncitizen's order of supervision and re-detaining them."). Yet Respondents argue that because Petitioner was arrested for a DUI in 2025, the "specific circumstances" of his re-detention require, at most, a post-detention bond hearing. Dkt. # 12 at 10. The Court disagrees.

B. Application of *Mathews* Factors

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

It is undisputed that Petitioner has a liberty interest in being free from detainment. Petitioner's family lives in the United States, and Petitioner has lived in the United States for almost his entire life, working in the community and developing community relationships. Dkt. # 15-3 at 11-14. This is enough time to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthening his interest in being free from detention. *Pablo Sequen v. Albarran*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon*, 459 U.S. at 32-33) (cleaned up).

In revoking Petitioner's release, the Government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Accordingly, the first *Mathews* factor favors Petitioner.

2. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Respondents say that the arrest comported with Due Process because the post-arrest notice cited the Petitioner's 2025 DUI arrest as a violation of his OSUP and the reason for revocation of release. Dkt. # 12 at 10. But no evidence in the record indicates this arrest ever resulted in a conviction. *See Carrasquilla Ocampo v. Mullin*, 2026 WL 2085292, at *2 (W.D. Wash. July 20, 2026) (noting that risk of erroneous deprivation is high where a petitioner was only charged, and not convicted, with a DUI because whether a supervision violation occurred "is a contested question that no neutral arbiter has resolved.").

The notice also stated that Petitioner's release was revoked because "[c]ircumstances have changed such that there is significant likelihood of removal in the reasonably foreseeable future, as "ICE is seeking a travel document to effect your expeditious removal to Laos." Dkt. # 14-6. The notice stated that Laos had changed its internal policy regarding issuance of travel documents, but ICE did not cite the source of this change. Dkt. #14-5 at 2; *see Saley v. Scott*, 2026 WL 914810, at *4 (W.D. Wash. Apr. 3, 2026) (finding that almost identical language did not mitigate risk of erroneous deprivation because it gave petitioner "no information about the factual basis for revoking his OSUP and no basis to prepare a meaningful response"); *see also Yang v. Scott*, 2026 WL 632661, at *4 (W.D. Wash. Mar. 6, 2026) (finding that identical

language was not sufficient to fulfill ICE's re-detention regulations for the same reasons). Nor did ICE receive a travel document for Petitioner until three months after it detained Petitioner. Dkt. # 14-7.

These facts establish a high risk that Petitioner was erroneously deprived of his liberty interest when he was re-detained without prior notice or an opportunity to be heard. And even if the arrest or purported changed circumstances could justify re-detention, the complete lack of notice and a pre- or post-deprivation hearing indicate that there was a risk of erroneous deprivation. Accordingly, this factor weighs in Petitioner's favor.

3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

Here, the Government's interest in re-detaining Petitioner without a hearing is low. The Court acknowledges that the government likely has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But during his almost 12 years of release, Petitioner has only missed two check-ins, and he voluntarily returned for check-ins after those absences. Dkt. # 12 at 5; Dkt. # 13 at 3. Additionally, Petitioner is actively participating in immigration court proceedings, including a motion to reopen his removal order, and he has deep family ties in the United States. Dkt. # 13 at 5; Dkt. # 15-1 at 3; Dkt. # 15-3 at 11-14. These facts indicate that Petitioner does not pose a flight risk. As for preventing danger to the community, the Government did not detain Petitioner until almost a year after his 2025 DUI arrest, which was its cited reason for his re-detainment. This delay undermines any claim that the Government

believed Petitioner presented an imminent danger to the community. *See Jimenez Carrion v. Hermosillo*, 2026 WL 850753, at *3 (W.D. Wash. Mar. 27, 2026) (concluding that a petitioner's DUI arrest was not a basis for re-detainment months later without a hearing); *Korotkikh v. Bondi*, 2026 WL 496794, at *2 (W.D. Wash. Feb. 23, 2026) (concluding that a pre-detention hearing was necessary where there was a six-year gap between petitioner's DUI conviction and re-detainment).

Accordingly, this *Mathews* factor also favors Petitioner. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on [release conditions] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.").

4. Conclusion

In sum, all three *Mathews* factors favor Petitioner. The Government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

C. Other Arguments

Petitioner also contends that though he is subject to a final order of removal, the presumptively reasonable six-month period in which to remove him has elapsed. Dkt. # 9 at 25 (citing *Zadvydas v. Davis*, 553 U.S. 678, 701 (2001)). In his traverse, Petitioner argues that there is no significant likelihood of his removal because the immigration court ordered an emergency stay on his removal pending its decision on whether to reopen his removal proceedings. Dkt. #

15 at 2. Petitioner also argues that Respondents violated their own regulations, Petitioner's Fourth Amendment rights, and his rights under the Fifth Amendment, 8 U.S.C. § 1231, the Eighth Amendment, the Convention Against Torture, the INA, and the APA. Dkt. # 9 at 27-29. Because the Court grants his petition on other grounds, it does not reach these issues. *Perez Tinoco v. Hermosillo*, 2026 WL 2174762, at *4 (W.D. Wash. Feb. 12, 2026). This order does not prevent Petitioner from making these arguments in a future petition.

Petitioner also requests that the Court enter orders preventing Respondents from removing him to a third country—including Laos, which he argues is a third country for him given its citizenship rules. Dkt. # 9 at 32; Dkt. # 15 at 3-6. But an immigration court placed a stay on Petitioner's removal order pending the potential reopening of his removal proceedings. Dkt. # 15-1 at 3. The Court has not been updated on these immigration court proceedings so declines to address issues related to third country removal until they conclude.[2]

## IV
## CONCLUSION

For these reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 9) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to the same conditions of release that governed before he was re-detained. The Court further ORDERS that Petitioner shall not be re-detained unless and until he is provided with adequate notice and a hearing before a neutral decision maker to determine whether re-detention is appropriate, in accordance with all applicable laws.

---

[2] In line with this conclusion, the Court also declines to address Petitioner's request for injunctive relief preventing re-detainment unless Respondents obtain travel documents for Petitioner's removal to Thailand and give him the opportunity to leave on his own within two months. Dkt. # 9 at 32. The Court's grant of this petition is meant to prevent Respondents from unlawfully detaining Petitioner; it is not intended to determine the country to which Petitioner may be removed, particularly when there appear to be ongoing immigration court proceedings regarding his removal.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 28th day of August, 2026.

John H. Chun
United States District Judge